## Case No. 6,176.

### The HARVEST.

[1 Spr. 537.] [1]

District Court, D. Massachusetts. March, 1848.

#### SALVAGE—SEAMEN—COMPENSATION.

Where seamen belonging to a ship of war of the United States, were discharged therefrom at sea, in order that they might go on board of a whaling ship, which had received damage, and was short-handed, to render assistance, and they did so, and aided in bringing her safely into port, *held*, that their compensation was not to be limited to the then highest rate of seamen's wages, but that they might recover as for a salvage service.

[This was a libel in rem against the whale ship Harvest for salvage.]

E. D. Sohier and D. H. Dustin, for libellants.

A. H. Fiske, for respondent.

SPRAGUE, District Judge. The whale ship Harvest, of 360 tons, sailed from Nantucket, for the Pacific Ocean, on the 20th day of October, 1844. On the night of the 14th of November, she shipped a sea, which carried away her mizzen mast, bulwarks, all her boats, injured the wheel, swept the deck, sweeping overboard the whole of the watch on deck, consisting of the second mate and eight seamen, who were all lost. A few days afterwards, another man was lost from the bowsprit. The ship's company then consisted of the captain, first and third mates, one colored boat-steerer, the carpenter, cook, steward, and six seamen, five of whom had never before been to sea, and none except the captain and mates were able seamen. In this condition, the captain abandoned his voyage, and put away for a port in the West Indies, availing himself of the trade wind. On the 20th day of December, in lat. 28°, and long. 62°, the Harvest fell in with the United States ship Decatur, Captain Mayo, bound for Norfolk, from the coast of Africa. The Decatur took the Harvest in tow, and supplied her with a boat, a spar for a mizzen mast, and aided in raising and rigging it. The Decatur then cast off, and proceeded on her voyage. The Harvest hove to, and clewed up her topsails, which the Decatur took to be a signal of distress. The captain of the Harvest had previously made a request for five or six men, to aid in navigating his ship, which had not been complied with. The captain of the Decatur, upon seeing the signal, asked for volunteers to go on board of the Harvest. Some twenty or thirty seamen offered their services; the four libellants were selected; their wages were paid up to that time; their discharges from the service of the United States made out, and they were sent, under the charge of a sailing-master, to the Harvest, by whom the dis-

charges were delivered to the captain of that ship, with directions that, if the men performed their duty to his satisfaction, the discharges should be delivered to them, on arriving in the United States, otherwise, they should be sent to the nearest navy-yard. This was on the 21st December. The Harvest arrived at Edgartown on the 8th of January following, when the libellants were set on shore, and their discharges delivered to them, they having performed their duty, as able seamen, to the entire satisfaction of the captain. They proceeded immediately to Boston, and on the 20th day of January filed this libel. The respondent admits that the libellants were entitled to wages, at the highest rate given at that time to seamen, but denies that they are entitled to salvage, or other compensation than such wages; and insists that the claim in the libel does not embrace wages. After setting forth the facts, the libel asks for salvage, "and to so much as has been, and is actually allotted by this court, to persons doing and performing the like services, and for such other relief as shall to law and justice appertain." This sufficiently embraces a claim for compensation. Captain Coffin testifies that, after the other aid rendered by the Decatur, he thinks he could have reached the United States, without the assistance of the libellants, and that he did not make any signal of distress, but hove his ship to, and clewed up the topsails, that he might get some sleep, having been without rest for more than twenty-four hours. He must have known, however, that the Decatur being several miles from him, had taken it for a signal of distress, and had turned back and run down to him, and sent these men on board, solely in consequence of that signal. And when the libellants came on board of his vessel, he said nothing to them, or to the sailing-master, to undeceive them, when he must have seen that they were acting from the conviction, that he had made a signal of distress for the want of men. I am satisfied that the compensation to which the libellants are entitled, is not to be restricted to the rate of seamen's wages. They left a ship of war of the United States, in good condition, abundantly supplied with men, bound for Norfolk, with most favorable prospects, and voluntarily went on board of the Harvest, with a feeble and disheartened crew, exhausted officers, exposed for the want of proper bulwarks, her wheel injured, with such a mizzen mast as had been rigged at sea; and although it proved, in the event, that her hull had not suffered, yet, at the time, that could not have been certainly known. This was on the 21st of December. The ship was bound to Nantucket, at that inclement and boisterous season. They were on board eighteen days. The only fact which tends to diminish their compensation is, that the libellants all belonged to the North, and probably reached their homes earlier, and at less expense, than they could have done from

¹ [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

Norfolk. Under all the circumstances, I think that the libellants are entitled to the sum of $35 each.

Decree accordingly.